THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VANESSA SIMMONDS,<br><br>    Plaintiff,<br><br>and<br><br>GEEKNET, INC. (f/k/a VA LINUX SYSTEMS, INC.), a Delaware corporation,<br><br>    Nominal Plaintiff,<br><br>v.<br><br>CREDIT SUISSE SECURITIES (USA), LLC, a Delaware limited liability company,<br><br>    Defendant. | Case No. 2:12-cv-01937 JLR<br><br>**DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D) MOTION FOR COSTS AND STAY**<br><br>**NOTE ON MOTION CALENDAR: January 25, 2013** |

Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") respectfully submits this reply in further support of its motion under Federal Rule of Civil Procedure 41(d) [Dkt. No. 17] ("Mot.").

## INTRODUCTION

As shown in Credit Suisse's opening brief, this action ("*Geeknet II*") is "based on or includ[es] the same claim against the same defendant" (Fed. R. Civ. P. 41(d)) as *Simmonds v. Credit Suisse Securities (USA) LLC*, No. 2:07-cv-01583-JLR (W.D. Wash.) ("*Geeknet I*"). The Court accordingly may exercise its discretion to award costs, including legal fees, of *Geeknet I*, and Credit Suisse has provided the Court with detailed information substantiating such costs

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 1
Case No. 2:12-cv-01937 JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  reasonably incurred. Although no showing of bad faith is required, the underlying purposes of
2  the Rule—to deter vexatious litigation and compensate defendants—would be well served with
3  an award of costs here, where the timing and effect of Plaintiff's voluntary dismissal of
4  *Geeknet I* and filing of *Geeknet II* will cause Credit Suisse to incur needless and burdensome
5  further expense defending this action. Plaintiff's acknowledgement in her opposition brief
6  [Dkt. No. 23] ("Opp'n") that that she is contemplating the filing of additional such actions
7  *seriatim*, without pursuing the efficiencies of coordination, further supports an award of costs.

## ARGUMENT

9  Plaintiff opposes Credit Suisse's motion on four grounds, none of which has merit, and
10 the admissions in her brief and supporting declarations only add support for an award of costs
11 here.

12 ***First***, Plaintiff argues that this case is fundamentally different from *Geeknet I* because it
13 alleges certain supposedly different "essential" facts that were supposedly "undiscoverable"
14 when Plaintiff filed *Geeknet I*. Opp'n at 2-4. Specifically, Plaintiff contends that *Geeknet II*
15 differs in two respects: (1) it alleges a supposedly different Section 13(d) group, composed of
16 Credit Suisse, Sequoia Capital, Lehman Brothers, and Wilson Sonsini; and (2) it alleges
17 additional, supposedly different "coordinated conduct" among these alleged group members to
18 "maximize the spread" between the IPO offering price and aftermarket trading price. *Id.* at 2.
19 Credit Suisse will address these supposedly "different" allegations fully in its motion to
20 dismiss,[1] but it is of no moment for purposes of the present motion: Even if, as Plaintiff

---

[1] The group members identified in *Geeknet II*—Credit Suisse, Lehman Brothers, Wilson Sonsini, and Sequoia Capital—were in fact all either specifically named as group members in *Geeknet I* (in the case of Credit Suisse and Lehman Brothers) or referred to more vaguely as "principal shareholders" or as "stock and option holders, as identified in the IPO prospectus" (in the case of Wilson Sonsini and Sequoia Capital). *See Geeknet I* Compl. ¶¶ 14, 18; *see also* Prospectus for Initial Public Offering of stock of Linux Systems, Inc. ("Linux Prospectus"), at 59, 71, *available at* http://www.sec.gov/Archives/edgar/data/1096199/0000891618-99-005600.txt (disclosing Sequoia Capital and Wilson Sonsini share ownership at time of VA Linux IPO). Plaintiff's vague allegation that the alleged group sought to "maximize the spread" between the IPO and aftermarket prices appears to be simply a rewording of her allegation in *Geeknet I* that the group sought to "inflat[e] the aftermarket price of Linux stock to a level sufficiently above the IPO price to enable them to directly and indirectly reap substantial profits from the sale of Linux stock." *Geeknet I* Compl. ¶ 13.

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 2
Case No. 2:12-cv-01937 JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

asserts, these are new, different allegations, in service of new, different claims, *Geeknet II* nonetheless triggers the applicable standard under Rule 41(d), which requires merely that the second action be "based on or include[] the same claim against the same defendant." *See Russell-Brown v. Jerry, II*, 270 F.R.D. 654, 660 (N.D. Fla. 2010) ("[T]he mere addition of a defendant or a new claim or two does not prevent the application of Rule 41(d) so long as there are claims in the new case that arise from the same nucleus of operative facts such that the new case can be said to be 'based on or including' previously brought and dismissed claims.").

Here, *Geeknet II* is plainly based on, and includes, numerous claims against Credit Suisse that Plaintiff previously brought and voluntarily dismissed, as even a cursory comparison of the two complaints confirms. For example:

- Both complaints concern the Linux IPO in December 1999, and both allege that Credit Suisse and Lehman Brothers were part of a supposed group that collectively owned more than a 10% interest in Linux. *Compare* Amended Complaint ¶ 18, *Simmonds v. Credit Suisse Securities (USA) LLC*, No. 2:07-cv-01583-JLR, Dkt. No. 9 (hereinafter "*Geeknet I* Compl.") *with Geeknet II* Compl. ¶¶ 4.1, 5.2.

- Both complaints claim that group members saw Linux as a potentially "hot" IPO, and both allege that the group members, using their influence as insiders, coordinated efforts to inflate the aftermarket price of Linux stock. *Compare Geeknet I* Compl. ¶ 11, 13, *with Geeknet II* Compl. ¶¶ 4.1, 4.4, 4.5.

- Both complaints allege that Credit Suisse and Lehman Brothers supposedly created the opportunity for themselves directly and indirectly to share their customers' profits from sales and purchases of Linux stock in violation of NASD Conduct Rule 2330(f). *Compare Geeknet I* Compl. ¶ 12(a) *with Geeknet II* Compl. ¶ 4.8.

- Both complaints allege that Credit Suisse and Lehman Brothers, in conjunction with other Group members, required certain customers, in return for allocations of Linux IPO shares, to purchase additional shares of Linux stock in the aftermarket at higher prices (a practice referred to as "laddering"). *Compare Geeknet I* Compl. ¶ 12(b) *with Geeknet II* Compl. ¶ 4.9.

- Both allege that the Linux IPO featured lock-up agreements that were structured to permit some Linux shares to be released early from lock-up periods, and that group members profited from the early release of lock-up agreements. *Compare Geeknet I* Compl. ¶¶ 14, 15 *with Geeknet II* Compl. ¶ 4.7.

- Both allege that Credit Suisse analyst reports furthered the common objectives of the Group by issuing a "Buy" rating on Linux stock when it traded at approximately $190. *Compare Geeknet I* Compl. ¶ 17 *with Geeknet II* Compl. ¶ 4.10.

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D) MOTION FOR COSTS AND STAY - 3
Case No. 2:12-cv-01937 JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

- Both complaints assert a Section 16(b) claim arising from the Linux IPO, under which Credit Suisse, as part of a beneficial ownership Group, supposedly obtained profits from short-swing transactions in Linux stock, and that Credit Suisse is required to disgorge those profits under Section 16(b). *Compare Geeknet I* Compl. ¶¶ 19, 22 *with Geeknet II* Compl. ¶¶ 5.2, 5.3.

- Both complaints seek the same remedy: disgorgement of Credit Suisse's supposed short-swing profits, and fees for plaintiff's attorneys. *Compare Geeknet I* Compl. at p. 9 *with Geeknet II* Compl. ¶¶ 6.1, 6.3.

Plaintiffs contends that these many and substantive similarities are merely "superficial," *see* Opp'n at 3, but however characterized, Plaintiff persists in asserting them in *Geeknet II* and they more than suffice for purposes of Rule 41(d).

*Second*, Plaintiff argues that her conduct does not support an exercise of the Court's discretion to award costs. *Id.* at 4-7. Plaintiff argues that her conduct was not vexatious or an attempt to gain impermissible tactical advantage, contending that that she and her lawyers did not know about, and could not have known about, the supposedly "new" group allegations when they brought the prior action in 2007. But even crediting just for sake of argument Plaintiff's claim that supposedly new "key evidence" only "surfaced" in a **December 2009** blog post (*see id.* at 3; *see also* Simmonds Decl. at 1-2 [Dkt. 25]), Plaintiff offers no explanation as to why she did not file *Geeknet II* until **November 2012**, almost three years after the December 2009 article, but instead continued to litigate *Geeknet I* until voluntarily dismissing it in **June 2012**.[2] Whether or not *Geeknet II* is actually "a different suit involving different group members engaging in different conduct" (Opp'n at 6), for present purposes, the key point is that

---

[2] It is obvious that *Geeknet II* is time-barred even under the claimed "discoverability" timeline set forth in Plaintiff's opposition. Moreover, as Credit Suisse will show more fully in its motion to dismiss, Plaintiff actually alleges nothing "new" in the *Geeknet II* complaint, including as to Wilson Sonsini and Sequoia, that she could not have alleged based on the 1999 VA Linux IPO prospectus and other sources dating from shortly after the IPO, and all readily obtainable on the Internet. *See, e.g.*, Linux Prospectus at 59, 71 (disclosing Wilson Sonsini and Sequoia share ownership prior to IPO); Henry Norr, *Bay Tech Firm's Hot Debut*, San Francisco Chronicle, Dec. 10, 1999, at A1, *available at* http://www.sfgate.com/bayarea/article/Bay-Tech-Firm-s-Hot-Debut-Shares-soar-record-2891072.php (noting after IPO that Sequoia Capital held a 23% stake in VA Linux, then worth $2.16 billion); Renee Deger, *Wilson Cashes in as Linux IPO Explodes*, The Recorder, Dec. 13, 1999, *available at* http://www.law.com/jsp/article.jsp?id=900005514058 (noting Wilson Sonsini and related entities held 102,584 shares of VA Linux, worth $25.66 million after first day of trading).

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D) MOTION FOR COSTS AND STAY - 4
Case No. 2:12-cv-01937 JLR

by her own admission Plaintiff chose to sit on *Geeknet II* for years while continuing to litigate *Geeknet I*, and then voluntarily dismissed *Geeknet I* with, as she acknowledges, deliberately "careful" wording to allow her to bring *Geeknet II*. This had the vexatious effect of sidestepping the Court's Minute Order requiring leave to file an amended complaint, and avoiding the entry of a judgment in *Geeknet I* and the collateral effect it would likely have had on pursuing *Geeknet II*. Such conduct exemplifies precisely what Rule 41(d) is meant to deter.

***Third***, Plaintiff argues that any award should include only expenses, not fees. But the clear weight of authority holds that courts can award fees in addition to expenses. *See* Mot. at 6 n.3 (collecting cases); *see also Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, 2007 WL 2320672, at *3 (D. Haw. 2007) (noting that the "majority of courts . . . have awarded attorneys' fees under [Rule] 41(d) outright, recognizing that including attorneys' fees as part of an award of costs is consistent with the purposes of Rule 41(d)"). Credit Suisse submits that this interpretation of Rule 41(d) is more consistent with the Rule's twin purposes of deterring vexatious litigation and compensating defendants. *See* Mot. at 4-5 (discussing purposes of Rule 41(d)).

***Fourth***, Plaintiff quibbles with the reasonableness of certain fees and expenses that Credit Suisse incurred. Credit Suisse recognizes the Court's discretion in awarding fees, and notes that plaintiff's calculation of fees and costs also entitles Credit Suisse to an award. However, Credit Suisse stands by the reasonableness of its calculation in its motion, and that the amount sought—$24,278—is hardly excessive for a complex securities action litigated for over four years and through a successful appeal to the Supreme Court. In particular, Credit Suisse submits that the number of attorneys who worked on the case was reasonable in light of the case's long duration and complexity. The bulk of time expended by WilmerHale during most phases of the case was incurred by only two attorneys, David Lesser and Fraser Hunter. It was also reasonable to add three WilmerHale attorneys—Andrew Vollmer, Noah Levine, and Janet Carter—to the case at the Supreme Court stage given their specialized experience. Lane Powell attorneys' expenditures of time on this case, including travel by one attorney to the

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 5
Case No. 2:12-cv-01937 JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

Supreme Court, were also reasonable in light of Lane Powell's role in the case as liaison counsel for all of the Underwriter Defendants, including Credit Suisse. And, as explained previously, for multiple reasons the costs requested herein already reflect a substantial discount from the actual expenses and fees properly attributable to defense of *Geeknet I* as part of the Coordinated Cases. *See* Mot. at 6-7.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief, Credit Suisse respectfully requests that the Court order plaintiff to pay $24,278 in costs in connection with *Geeknet I*.[3]

DATED: January 25, 2013

LANE POWELL PC

By *s/Christopher B. Wells*
Christopher B. Wells, WSBA No. 08302

1420 Fifth Avenue, Suite 4100
Seattle, WA 98101-2338
Telephone: 206.223.7000
Facsimile: 206.223.7107
Email: wellsc@lanepowell.com

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By *s/David S. Lesser*
David S. Lesser *(pro hac vice pending)*
By *s/Fraser L. Hunter*
Fraser L. Hunter *(pro hac vice pending)*

7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212.230.8851
Facsimile: 212.230.8888

---

[3] In light of the Court's January 18, 2013, ruling on the scheduling of briefing on the motion to dismiss, and Plaintiff's representation to the Court that she will "immediately" pay any costs awarded, Credit Suisse agrees that no stay is warranted at this time, in advance of a ruling on the motion to dismiss.

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 6
Case No. 2:12-cv-01937 JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000  FAX: 206.223.7107

Email: david.lesser@wilmerhale.com
Email: fraser.hunter@wilmerhale.com

Attorneys for Defendant
Credit Suisse Securities (USA) LLC

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 7
Case No. 2:12-cv-01937 JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000  FAX: 206.223.7107

# CERTIFICATE OF SERVICE

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 25th day of January, 2013, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following:

**David M. Simmonds**
GORDON TILDEN THOMAS & CORDELL LLP
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477
Email: dsimmonds@gordontilden.com

**Jeffrey I Tilden**
GORDON TILDEN THOMAS & CORDELL LLP
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477
Email: jtilden@gordontilden.com

**Ian S Birk**
KELLER ROHRBACK
1201 3RD AVE
STE 3200
SEATTLE, WA 98101-3052
206-623-1900
Email: ibirk@kellerrohrback.com

**William Candler Smart**
KELLER ROHRBACK
1201 3RD AVE
STE 3200
SEATTLE, WA 98101-3052
206-623-1900
Fax: 206-623-3384
Email: wsmart@kellerrohrback.com

**Mark A Wilner**
GORDON TILDEN THOMAS & CORDELL LLP
1001 4TH AVE
STE 4000
SEATTLE, WA 98154
206-467-6477

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 8
Case No. 2:12-cv-01937 JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000 FAX: 206.223.7107

1  Fax: 206-467-6292
   Email: mwilner@gordontilden.com
2
   **Molly Margaret Daily**
3  STOEL RIVES LLP
   600 UNIVERSITY ST
4  STE 3600
   SEATTLE, WA 98101-3197
5  206-624-0900
   Fax: 206-386-7500
6  Email: mmdaily@stoel.com

7
         DATED this 25th day of January, 2013 at Seattle, Washington.
8

9                                            *s/Laurel Hooper*
                                             Laurel Hooper
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S REPLY IN SUPPORT OF RULE 41(D)
MOTION FOR COSTS AND STAY - 9
Case No. 2:12-cv-01937 JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
206.223.7000  FAX: 206.223.7107