# EXHIBIT F

# GORDON TILDEN THOMAS & CORDELL LLP
ATTORNEYS AT LAW

1001 FOURTH AVENUE, SUITE 4000 · SEATTLE, WASHINGTON 98154-1007
TELEPHONE: (206) 467-6477 · FACSIMILE: (206) 467-6292
EMAIL: JTILDEN@GORDONTILDEN.COM

August 29, 2012

*Via Email, Fax, and U.S. Mail*

Kenneth Langone
Chairman of the Board of Directors, President, and CEO
Geeknet, Inc. (f/k/a VA Linux Systems, Inc.)
11216 Waples Mill Road, Suite 100
Fairfax, VA 22030

Re:  Section 16(b) Demand

Dear Mr. Langone and Other Geeknet Board Members:

We represent Geeknet, Inc. shareholder Vanessa Simmonds. On her behalf and pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), we request that Geeknet bring suit against Credit Suisse Securities (USA) LLC within 60 days to prosecute the claim described in the enclosed draft complaint.

Very truly yours,

Jeffrey I. Tilden

JIT:jl
Enclosure
cc:  Barnes Ellis (w/encl.)

**PAGE 220**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

VANESSA SIMMONDS,

Plaintiff,

and

GEEKNET, INC. (f/k/a VA LINUX SYSTEMS, INC.), a Delaware corporation,

Nominal Plaintiff

v.

CREDIT SUISSE SECURITIES (USA) LLC, a Delaware limited liability company,

Defendant

NO. _____

COMPLAINT

JURY DEMAND

## I. PARTIES

1.1 <u>Plaintiff Simmonds</u>. Vanessa Simmonds is a resident of the state of Washington. Ms. Simmonds is a shareholder of Geeknet, Inc.

1.2 <u>Nominal Plaintiff Geeknet</u>. Geeknet, Inc. ("Geeknet") is formerly known as VA Linux, Inc. ("VA Linux") (collectively, "VA Linux"). It is the "issuer" in this case. VA Linux is a Delaware corporation headquartered in Fairfax, Virginia.

COMPLAINT – 1

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 221

1.3   <u>Defendant Credit Suisse</u>. Credit Suisse Securities (USA) LLC ("Credit Suisse") is a Delaware limited liability company headquartered in New York, New York. The conduct of Credit Suisse at issue was performed by Credit Suisse under its former name, Credit Suisse First Boston.

## II.   NON-PARTY GROUP MEMBERS

2.1   <u>Sequoia Capital</u>. Sequoia Capital ("Sequoia Capital"), including its related entities, is a Silicon Valley, California-based private venture capital ("VC") firm. Sequoia Capital was one of the most prolific pre-IPO backers of Internet-related ("dot.com") companies at the time of VA Linux's IPO in December 1999. The IPOs of 18 Sequoia Capital-backed companies—including VA Linux—occurred during 1999.

2.2   <u>Wilson Sonsini</u>. Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini") is a Silicon Valley, California-based law firm. Wilson Sonsini was heavily involved in dot.com IPOs at the time of the VA Linux IPO in December 1999. Wilson Sonsini provided legal representation in 118 IPOs (representing both companies and underwriters) during 1999—the most of any law firm in the nation. Although a law firm, Wilson Sonsini acquired pre-IPO equity positions in many of the IPOs in which it was involved, including VA Linux. Wilson Sonsini reportedly made $200 million in 2000 through its IPO investments—more than it made from practicing law. As discussed below, Wilson Sonsini's financial interests were aligned with the VCs in connection with the VA Linux IPO in particular, given the law firm's significant pre-IPO holdings of VA Linux securities.

COMPLAINT – 2

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

2.3     Lehman Brothers. Lehman Brothers Inc. ("Lehman Brothers") is a Delaware corporation headquartered in New York City, New York. Lehman Brothers was a secondary underwriter in the VA Linux IPO and owned pre-IPO shares of VA Linux through related venture capital entities. Lehman Brothers filed for bankruptcy in September 2008.

### III.  JURISDICTION AND VENUE

3.1     Subject Matter Jurisdiction. Jurisdiction in this Court arises under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa ("Section 27").

3.2     Personal Jurisdiction. The Court has personal jurisdiction of all parties.

3.3     Venue. Venue is proper under Section 27 because, *inter alia*, Credit Suisse transacts business in this district.

### IV.  FACTS ENTITLING PLAINTIFF TO RELIEF

4.1     Group Members. Sequoia Capital, Wilson Sonsini, Lehman Brothers, and Credit Suisse (the "Group" or "Group Members") collaborated to create a spread between the VA Linux IPO price and its aftermarket price so that the Group Members could sell their shares or otherwise lock-in profits at inflated aftermarket prices. All Group Members were experienced, powerful, short-term investors with significant control over VA Linux, and used their collective influence to maximize the IPO/aftermarket price spread.

4.2     Control of Underwriter Selection. Sequoia Capital, Lehman Brothers, and Wilson Sonsini strongly influenced VA Linux's decision to choose Credit Suisse

COMPLAINT – 3

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 223

as lead underwriter of the VA Linux IPO. At the time of the VA Linux IPO, Sequoia Capital, Wilson Sonsini, and Lehman Brothers held significant financial interests in VA Linux:

- Sequoia Capital owned more than nine million shares of VA Linux, approximately eight million of which were purchased in October 1998 at $0.4567 per share and the balance purchased in June 1999 at $3.86 per share.

- Wilson Sonsini owned no less than 102,584 shares of VA Linux, which were purchased through related partnerships and individuals in two tranches in October 1998 and June 1999, at $0.4567 and $3.86 per share, respectively.[1]

- Lehman Brothers owned no less than 1,554,404 shares of VA Linux, which were purchased through related entities at $3.86 per share in June 1999.

Collectively, these three Group Members owned no less than 10,656,988 shares of VA Linux, which represented approximately 27 percent of VA Linux's outstanding shares. Sequoia Capital itself owned approximately 23 percent of the outstanding shares—more than any other individual VA Linux shareholder—and had a representative on the VA Linux board of directors. Sequoia Capital, Lehman Brothers, and Wilson Sonsini also had extensive experience with Credit Suisse in prior IPOs and knew that Credit Suisse would participate in the orchestrated conduct necessary to further their common objectives for the VA Linux IPO.

---

[1] By virtue of its significant pre-IPO holdings of VA Linux securities, the financial interests of Wilson Sonsini were aligned with Sequoia Capital and other VCs.

COMPLAINT – 4

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

4.3 <u>Credit Suisse-VC Connection</u>. Sequoia Capital and Wilson Sonsini had pre-IPO investments in an inordinate number of issuers that went public during this time period. Their collaboration with Credit Suisse, Lehman Brothers, and other like-minded underwriters went far beyond a single underwriting and was therefore significantly more valuable to high-profile underwriters—like Credit Suisse and Lehman Brothers—than a relationship with individual issuers or their executive officers. Such high-profile underwriters were uniquely suited to provide "all-star" research coverage strategically issued to give periodic boosts to the aftermarket stock price of its IPO clients. Underwriters, like Credit Suisse, aggressively sought out a pipeline of future business from VCs, like Sequoia Capital, as well as from those with financial interests similar to a VC and with extraordinary influence, like Wilson Sonsini.[2] The conduct of these entities was exemplified by the Group Members in the VA Linux IPO. All Group Members were motivated to, and in fact did work together to achieve a significant IPO/aftermarket price spread that created the opportunity for Group Members to sell their VA Linux shares or otherwise lock in profits in an inflated aftermarket.

4.4 <u>The Group Prices VA Linux's IPO Anticipating Immediate, Significant Appreciation</u>. In establishing the price of VA Linux's IPO shares, the Group ostensibly relied on traditional valuation models for companies of similar size, history of growth, profit and revenue forecasts, and the like. The Group knew that

---

[2] By 2000, investment banking had become Credit Suisse's fastest growing and most profitable business.

COMPLAINT – 5

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 225

such valuation models would not interfere with the methods the Group planned to use to maximize the spread between VA Linux's IPO and aftermarket share prices. Consistent with its objectives, the Group knew that its conduct would cause the price of VA Linux's aftermarket shares to dwarf the $30 IPO price. In fact, VA Linux shares traded in the immediate aftermarket at more than $300.

4.5    The Group Creates a Pre-IPO Upward Price Trend. In furtherance of its objectives, the Group created a pre-IPO upward price trend to maximize the spread between VA Linux's IPO and its aftermarket prices. VA Linux initially indicated a low projected IPO price and subsequently raised the projected price as reflected in a series of amended pre-IPO filings. The Group Members designed this upward price trend to give investors the impression of a "hot IPO" and build momentum for a sharp increase in VA Linux's aftermarket share price. In fact, VA Linux's projected IPO price was raised over 200 percent—from $13 to $23 to $30 per share—in the three days prior to its IPO.

4.6    Neutralizing VA Linux Officers and Directors. The Group Members neutralized VA Linux's executive officers and directors, and otherwise ensured their cooperation and acquiescence, throughout the IPO process. The Group Members provided the officers and directors with highly-profitable and low-risk personal financial enrichment opportunities. These opportunities included stakes in underwriter and VC funds, the allocation of immediately profitable IPO shares through "friends and family" reservations, and an inflated aftermarket into which officer and director stock holdings could be sold.

COMPLAINT – 6

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

4.7     **Group Member Exit Strategies.** As an integral part of their collaboration, the Group Members agreed upon various exit strategies to lock-in profits dependent on the aftermarket price of VA Linux shares in the days, weeks, and months following the IPO. These exit strategies included early releases from the 180-day lock-up agreement[3] and the use of "collars" and other hedging devices that, in effect, evaded restrictions on sales, regulatory reporting requirements, and shareholder detection. The early exit strategies collaboration was crucial, and of tremendous monetary value. By the time the 180-day lock-up expired, the price of VA Linux shares—which had exceeded $300 in the immediate IPO aftermarket—had fallen to $34. On the one-year anniversary of its IPO, VA Linux was trading under $10.

4.8     **Prohibited Underwriter Profit Sharing: Kickbacks.** Credit Suisse and Lehman Brothers, as part of their collaboration with Sequoia Capital and Wilson Sonsini, created the opportunity for themselves to profit or share in profits derived from the transactions in VA Linux stock traded in customer accounts. This conduct violated NASD Conduct Rule 2330(f), which prohibited Credit Suisse and Lehman Brothers from sharing, directly or indirectly, in the profits or losses of their customers. Credit Suisse and Lehman Brothers engaged in kickback arrangements specifically to disguise and conceal their beneficial ownership of the VA Linux shares traded in customer accounts. As a result, the trading details in VA Linux

---

[3] VA Linux shares owned by entities affiliated with Lehman Brothers were subject to an additional 90-day lock-up because Lehman Brothers participated in the IPO as an underwriter.

COMPLAINT – 7

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 227

securities beneficially owned by Credit Suisse in customer accounts are not available to Plaintiff or other VA Linux shareholders through SEC filings, reasonable diligence, or otherwise.

4.9    Prohibited Aftermarket Inflation: Laddering. Credit Suisse and Lehman Brothers, in collaboration with Sequoia Capital and Wilson Sonsini, and with the objective of inflating the aftermarket price of VA Linux stock, required a select, inner-circle of customers, in return for allocations of VA Linux IPO shares, to purchase additional shares of VA Linux securities in the aftermarket at progressively higher prices. This practice is referred to as "laddering" and violated Rule 101 of Regulation M under the Exchange Act. Laddering was a key method employed by the Group to maximize VA Linux's IPO/aftermarket price spread.

4.10   Credit Suisse Analyst Coverage Further Moves Stock Price. Pursuant to the Group collaboration, Credit Suisse further inflated the aftermarket price of VA Linux shares through "friendly" all-star analyst research coverage. For example, despite the Group Members' decision to price VA Linux's IPO at $30 per share, Credit Suisse issued a "Buy" rating when VA Linux shares were trading at approximately $190 less than 30 days later. Other than furthering the collaborative efforts of Credit Suisse, Lehman Brothers, Sequoia Capital, and Wilson Sonsini as described herein, there is no logical explanation for how or why VA Linux shares—which were supposedly fairly priced at $30 on or about December 9, 1999—became undervalued at $190 less than a month thereafter.

COMPLAINT – 8

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 228

## V. CREDIT SUISSE'S SECTION 16(b) LIABILITY

5.1 <u>Section 16(b)</u>. This case arises under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Section 16(b)"). Section 16(b) imposes a strict, prophylactic rule on corporate insiders who engage in "short-swing" trading—trading in the securities of the issuing corporation ("issuer") within any six-month period. Under Section 16(b), insiders are presumed to have access to inside information and presumed to use that inside information when they engage in short-swing trading. As a result, they must disgorge any profits from short-swing trading to the issuer.

5.2 <u>Insider Status of Credit Suisse</u>. Credit Suisse is a statutory insider under Section 16(b). Section 16(b) insiders include officers, directors, and any shareholder with more than a 10 percent interest in the issuer. A shareholder with more than a 10 percent interest in the issuer can be a single shareholder that individually owns more than a 10 percent interest. It can also be a group of shareholders that collectively owns more than a 10 percent interest. As described above, Credit Suisse is a member of a group comprised of itself, Sequoia Capital, Lehman Brothers, and Wilson Sonsini. Collectively, the Group beneficially owned in excess of 10 percent of VA Linux's outstanding common stock from the Group's inception prior to the commencement of public trading on December 9, 1999, through at least June 8, 2000.

5.3 <u>Short-Swing Profits of Credit Suisse</u>. Statutory insider Credit Suisse profited from transactions in VA Linux securities traded within six months of the

COMPLAINT – 9

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

VA Linux IPO. Section 16(b)'s disgorgement obligation reaches all profits from short-swing traded securities in which the insider has a beneficial ownership interest. Credit Suisse beneficially owned short-swing traded VA Linux securities because it had or shared a pecuniary interest in those securities. *See* 17 C.F.R. § 240.16a-1(a)(2) (defining beneficial owner as any person with a direct or indirect "pecuniary interest" in the securities). "Pecuniary interest" is defined as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 C.F.R. § 240.16a-1(a)(2)(i). Credit Suisse had or shared pecuniary interests in various ways, including without limitation:

- Sales by Sequoia Capital and Wilson Sonsini and their distributees, effectuated directly or through collars or other forward-sales devices, into the inflated aftermarket orchestrated by Credit Suisse as monetized incentive for Sequoia Capital and Wilson Sonsini to direct future investment banking business to Credit Suisse;

- Purchases and/or sales of IPO shares by Credit Suisse and its affiliates, including Credit Suisse-related investment funds and shares allocated through issuer "friends and family" share reservations;

- Purchases and sales of IPO shares by Credit Suisse customers pursuant to prearranged agreements with Credit Suisse to share profits from the purchase of IPO shares and the immediate sales of those shares into the inflated aftermarket; and

- Purchases and/or sales of IPO shares into the inflated aftermarket by individuals or entities to whom the shares were allocated by Credit Suisse as monetized incentive for the recipient to direct

COMPLAINT – 10

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 230

future investment banking business to Credit Suisse.

Credit Suisse's allocations of IPO shares and/or sales by its intended beneficiaries into the inflated aftermarket were functionally equivalent to Credit Suisse transacting the purchases and/or sales itself and then paying out the resulting profits as bribes to the recipients. Credit Suisse had pecuniary interests in both the purchases of IPO shares and the sales into the inflated aftermarket whether the shares were purchased and/or sold by it directly or by the intended recipients of its monetized inducements.

5.4 <u>Profit Disgorgement Obligation of Credit Suisse</u>. Section 16(b) requires Credit Suisse to disgorge to VA Linux all profits, with interest, from short-swing transactions in beneficially-owned securities. The amount of Credit Suisse's profits, and its corresponding disgorgement obligation, will be proven at trial.

5.5 <u>Concealment of Insider Status and Transaction Details by Credit Suisse</u>. Credit Suisse failed to file reports pursuant to Section 16(a), 15 U.S.C. § 78p(a). Section 16(a) reports are the main source of information for enforcing Section 16(b). Section 16(a) requires an insider-group to disclose its existence and, therefore, its members' status as statutory insiders under Section 16(b). Section 16(a) also requires group members to disclose the details of their individual transactions, from which any resulting profits can be calculated. The transaction details include, *inter alia*, trading dates and purchase/sale prices and volumes. Here, to date, the Group and its members have not complied with Section 16(a).

COMPLAINT – 11

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 231

They have failed to file Section 16(a) reports and have otherwise concealed their collaborative conduct and trading activity from public scrutiny. Credit Suisse, in particular, did not file Section 16(a) reports despite knowing that its collaboration with Sequoia Capital, Wilson Sonsini, and Lehman Brothers made it a statutory insider under Section 16(b). Instead, Credit Suisse engaged in conduct intentionally designed to conceal its beneficial ownership of VA Linux shares in which it had pecuniary interests. The existence of the Group and Credit Suisse's insider status is now potentially ascertainable only through an intensive investigation using maximum diligence. However, the existence of the Group and Credit Suisse's insider status remain, even today, beyond the knowledge of a reasonably diligent shareholder. As to the specific transaction details and resulting profits, those facts remain beyond the knowledge of even the most diligent shareholder or plaintiff. The details of the transactions in VA Linux securities in which Credit Suisse had pecuniary interests are not available to Plaintiff or any other VA Linux shareholder through reasonable diligence, or otherwise. No such information is located anywhere in the public domain.

5.6   **Statutory Demand and Vesting of Section 16(b) Claims.** Pursuant to Section 16(b), Plaintiff made a 60-day demand on the Geeknet board of directors by letter dated August 29, 2012. The letter included a draft complaint identical in all substantive and material respects to this Complaint. Geeknet did not bring suit or otherwise prosecute this Section 16(b) claim within 60 days after Plaintiff's demand. Therefore, all rights to maintain this action have vested fully in Plaintiff.

COMPLAINT – 12

GORDON TILDEN THOMAS & CORDELL LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 232

## VI. RELIEF REQUESTED

As a result of the foregoing, Plaintiff requests the following relief:

6.1  <u>Disgorgement</u>.  Disgorgement by Credit Suisse to VA Linux of all short-swing profits from transactions in VA Linux securities beneficially owned by Credit Suisse from December 9, 1999 to June 8, 2000, in amounts to be proven at trial;

6.2  <u>Interest</u>.  Pre-judgment and post-judgment interest on all disgorgeable profits;

6.3  <u>Fees and Costs</u>.  Attorneys' fees and costs; and

6.4  <u>Further Relief</u>.  Such other relief as this Court deems just and equitable.

DATED this _____ day of _____, 2012.

| | |
|---|---|
| **GORDON TILDEN THOMAS & CORDELL LLP**<br>Attorneys for Plaintiff | **KELLER ROHRBACK L.L.P.**<br>Attorneys for Plaintiff |
| By:_____<br>Jeffrey I. Tilden<br>Mark A. Wilner<br>David M. Simmonds<br>1001 Fourth Avenue, Suite 4000<br>Seattle, Washington 98154<br>Telephone: (206) 467-6477<br>Facsimile: (206) 467-6292<br>Email: jtilden@gordontilden.com<br>Email: mwilner@gordontilden.com<br>Email: dsimmonds@gordontilden.com | By:_____<br>William C. Smart<br>Ian S. Birk<br>1201 Third Avenue, Suite 3200<br>Seattle, Washington 98101<br>Telephone: (206) 623-1900<br>Facsimile: (206) 623-3384<br>Email: wsmart@kellerrohrback.com<br>Email: ibirk@kellerrohrback.com |

COMPLAINT – 13

**GORDON TILDEN THOMAS & CORDELL LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

PAGE 233