UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VANESSA SIMMONDS,<br><br>        Plaintiff,<br><br>and<br><br>GEEKNET, INC.,<br><br>        Nominal Plaintiff,<br><br>v.<br><br>CREDIT SUISSE SECURITIES (USA) LLC,<br><br>        Defendant. | CASE NO. C12-1937JLR<br><br>ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND |

## I. INTRODUCTION

Before the court is Defendant Credit Suisse Securities (USA) LLC's ("Credit Suisse") motion to dismiss. (Mot. (Dkt. # 31).) This is a securities case in which

ORDER- 1

Plaintiff Vanessa Simmonds[1] alleges insider trading by Credit Suisse and several collaborators in connection with one of the hottest opening-day Initial Public Offerings ("IPO") of the late-1990s and early-2000 dot.com era.[2] Ms. Simmonds alleges that Credit Suisse collaborated with law firm Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini"), venture capital firm Sequoia Capital ("Sequoia"), and investment bank Lehman Brothers to over-inflate for personal gain the post-IPO stock price of a company called VA Linux (now called Geeknet, Inc.). (Compl. (Dkt. # 1) ¶ 4.1.) Pursuant to this theory, Ms Simmonds asserts a claim for violation of Section 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b). (*Id.* ¶¶ 5.1-5.3.)

Problematically, Ms. Simmonds' claim is based on conduct that occurred more than thirteen years ago. (*See generally* Compl.) VA Linux went public on December 9, 1999, and all of the conduct comprising Ms. Simmonds' claim occurred around that time. (*Id.* ¶ 2.1-2.2.) Thus, the primary question before the court on this motion to dismiss has little to do with the merits of the case, but rather relates to whether Ms. Simmonds' Section 16(b) claim against Credit Suisse is time-barred. The statute of limitations for Section 16(b) claims is 2 years, and that time has long ago expired. *See* 15 U.S.C. § 78p(b). Thus, the question the court must now address is whether equitable tolling

---

[1] This is a shareholder derivative suit and Ms. Simmonds is proceeding on behalf of nominal Plaintiff Geeknet, Inc.

[2] An IPO is a financing tool companies use to raise capital through equity rather than debt. An issuing company, also referred to as "the issuer," can earn equity capital by selling its shares to a large number of public investors. This process of raising capital is commonly referred to "going public" or an "initial public offering."

applies to this action and extends the limitations period long enough so that Ms. Simmonds' claim can proceed.

This is not the first time this question has been before this court in a case involving this plaintiff, this defendant, and this claim. In 2007, Ms. Simmonds filed 54 derivative shareholder actions against different defendants involved in dot.com-era IPOs, *see In re Section 16(b) Litigation*, 602 F.Supp.2d 1202, 1204 (W.D. Wash. 2009), including one based on the VA Linux IPO. (*See Simmonds v. Credit Suisse Group, et al.*, No. 07-C1559JLR (W.D. Wash. 2007), Compl. (Dkt. # 1).) That action named Credit Suisse as the defendant and involved many of the same allegations as this case. (*See id.*) All 54 of Ms. Simmonds' actions were consolidated in this court, *Simmonds*, 602 F.Supp.2d at 1204, and on March, 12, 2009, the court dismissed them all. *Id.* at 1204-05. This included dismissing the VA Linux-based case as time-barred and rejecting Ms. Simmonds' equitable tolling argument. *Id.* at 1204-05, 1216-18. The Ninth Circuit reversed the court's decision, but the case was appealed to the United States Supreme Court, which reversed the Ninth Circuit, set forth a standard for equitable tolling under Section 16(b), and remanded for further consideration. *Credit Suisse Securities (USA) LLC v. Simmonds*, 132 S. Ct. 1414 (2012). Before the court took any action on remand, Ms. Simmonds voluntarily dismissed her claims (*see Simmonds v. Credit Suisse*, No. 07-C1559JLR, Not. of Voluntary Dismissal (Dkt. # 54)), and refiled a similar, but slightly different, claim based on the VA Linux IPO, again naming Credit Suisse as Defendant. (*See* Compl.)

So here we are again: the court has already once held time barred a Section 16(b) claim by this Plaintiff against this Defendant based on similar facts and held that equitable tolling did not apply. Now, the court must decide whether this new version of the same claim is different enough that equitable tolling applies now where it did not before. As explained below, the court finds that this new Complaint alleges substantially the same facts as the old one. To be sure, there are differences between this Complaint and its predecessor. However, the differences are in the legal theories on which the claims are based, not the facts underlying those theories. These facts were known long ago. Equitable tolling applies where new facts become available which could not have been discovered before—not when the same facts are recast as a different legal theory. Accordingly, the court finds that equitable tolling does not apply and GRANTS Credit Suisse's motion to dismiss.

## II. FACTUAL BACKGROUND

Ms. Simmonds' original Complaint against Credit Suisse, just like this one, alleged a scheme to over-inflate VA Linux's post-IPO share price. (*Simmonds v. Credit Suisse*, No. 07-C1559JLR, 1st Am. Compl. (Dkt. # 9)). The scheme allegedly involved collaboration between Credit Suisse, secondary underwriter Lehman Brothers, and certain insiders within VA Linux (all of whom owned substantial shares of VA Linux stock). (*See id.*) Ms. Simmonds alleged that these parties were engaged in illegal

practices such as underpricing, "laddering,"[3] "spinning,"[4] and other practices designed to artificially drive up the price of VA Linux stock so that key shareholders could realize a profit through "short swing" transactions. (*See id.* ¶¶ 12-19.)

This new Complaint is, in some ways, different from the earlier Amended Complaint. One difference between the two complaints is that, rather than alleging collaboration between Credit Suisse and VA Linux insiders, the new Complaint alleges collaboration between Credit Suisse, issuer council Wilson Sonsini, Lehman Brothers, and venture capital firm Sequoia (again, all of whom owned substantial amounts of VA Linux stock). (*See* Compl.) A second difference is that the new Complaint alleges that the collaborators used "collaring,"[5] a hedging practice, to realize profit from their stock holdings without actually selling those holdings. (*Id.* ¶ 4.7.) This is important because selling stock immediately after the IPO would have been an illegal "short swing" transaction under Section 16(b). The Complaint alleges that the collaborators used collaring to avoid Section 16(b) liability and reap illicit profits undetected.

---

[3] "Laddering" refers the practice of requiring certain insiders to purchase shares of stock at progressively higher prices after an IPO to create the illusion of a hot stock. (*See* Compl. ¶ 4.9.)

[4] "Spinning" refers to the practice of allocating shares of stock to insiders with the expectation of receiving new or additional future business in return. (*Simmonds v. Credit Suisse*, No. 07-C1559JLR, 1st Am. Compl. at 7-8.)

[5] A "collar" is a hedging device whereby an owner of stock sells a "call option" on that stock at one strike price and buys a "put option" on the same stock at a lower strike price. (*See* Resp. (Dkt. # 34) at 14-15.) This way, the owner effectively locks in profits at a current stock price without actually selling the stock. For example, if an investor put a collar on a stock at a price of $300.00, the investor could guarantee that it will ultimately realize between $290.00 and $310.00 by buying and selling options at those prices. (*See id.*)

ORDER- 5

Apart from these two differences, the two Complaints are very similar. They are both based on the same December 9, 1999, VA Linux IPO and both allege the same general course of collaborative conduct (underpricing, laddering, spinning, etc.).

### III. ANALYSIS

#### A. Standard on a Motion to Dismiss

A statute of limitations defense can form the basis of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss if the facts and dates alleged on the face of the complaint indicate that the claim is time-barred. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. *Id.* In determining whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim and survive a motion to dismiss, the complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or the "formulaic recitation of the elements of a cause of action will not do." *Id.* The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663 (internal quotation marks omitted); *see also Telesaurus VPC, LLC*

*v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

**B.     The Supreme Court's Decision in *Credit Suisse v. Simmonds***

The Supreme Court set forth much of the law that will govern this case in the appeal of Ms. Simmonds' first action against Credit Suisse. *See generally Credit Suisse Securities*, 132 S. Ct. 1414. In its opinion in that case, the Supreme Court began by explaining general background principles of Section 16(b) liability. Under Section 16(b), a corporation or security holder of that corporation may bring suit against (among others) "beneficial owners" of the corporation—individual owners or groups of owners owning 10% or more of the company's stock—who realize any profits from the purchase and sale, or sale and purchase, of the corporation's securities within any six-month period. *Id.* at 1417. "The statute imposes a form of strict liability" and requires insiders to disgorge these "short-swing" profits "even if they did not trade on inside information or intend to profit on the basis of such information."[6] *Id.* (citing *Gollust v. Mendell*, 501 U.S. 115, 122 (1991)).

Next, the Court explained that Section 16(b) has a two year statute of limitations and set forth the principles that govern equitable tolling for Section 16(b) actions. *Id.* at

---

[6] The purpose of this strict liability rule is to discourage corporate insiders from taking advantage of their access to non-public information. To do so, Section 16(b) imposes a flat rule that prohibits an entire category of six-month purchase and sale transactions. *See, e.g., Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 234 (1976).

1417, 1419-20. Specifically, the Court held that a litigant seeking equitable tolling has the burden of establishing that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way. *Id.* at 1419 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Court made clear that this test, not any other, was the appropriate inquiry for determining whether equitable tolling applies in a Section 16(b) action. *Id.* at 1419-20. The Court rejected both the so-called *Whittaker* rule from the Ninth Circuit and an "actual notice" standard from the Second Circuit. *Id.* at 1419-21.

Finally, the Supreme Court made one principle abundantly clear: equitable tolling is not available for Section 16(b) actions beyond the time when the plaintiff "is aware, or should have been aware, of the facts underlying the claim." *Id.* at 1420. "The potential for such endless tolling in cases in which a reasonably diligent plaintiff would know of the facts underlying the action is out of step with the purpose of limitations periods in general . . . [and] is especially at odds with a provision that imposes strict liability on putative insiders." *Id.* (citing *Gollust*, 501 U.S. at 122). This exposition of law is central to the court's ruling today.

## C. The Supreme Court's Decision Applied to This Case

Under the standard articulated by the Supreme Court, equitable tolling does not apply to this case because it has been greater than two years since Ms. Simmonds was "aware or should have been aware of the facts underlying [her] claim." *See id.* at 1420. The court reaches this conclusion despite giving Ms. Simmonds the benefit of all pleaded facts and reasonable inferences drawn therefrom, concluding that, even under this standard, it appears beyond doubt that the plaintiff can prove no set of facts that would

ORDER- 8

establish the timeliness of her claim.[7] *See Von Saher*, 592 F.3d at 969. Ordinarily, equitable tolling "involves fact-intensive disputes 'about what the notice was, where it was disseminated, who received it, when it was received, and whether it provides sufficient notice of relevant . . . facts.'" *Id.* at 1421. However, the unique circumstances of this litigation make Rule 12(b)(6) dismissal appropriate.

The court reaches this conclusion mainly by comparing the current iteration of this litigation to the one before it. In the previous case, the court held that "there is no dispute that all of the facts giving rise to Ms. Simmonds' complaint against the Underwriter Defendants [including Credit Suisse in the VA Linux case] were known to the shareholders . . . for at least five years before these cases were filed [in 2007]." *Simmonds*, 602 F. Supp. 2d at 1217. In other words, the court held that the original 16(b) claims were ineligible for equitable tolling after 2002, roughly ten years ago. *Id.*

Granted, this new iteration of 16(b) claims is different in two ways: this iteration (1) names different collaborators—Wilson Sonsini and Sequoia—and (2) alleges conduct—collaring—that may be harder for a reasonably diligent shareholder to uncover.

Nevertheless, the differences are not of the kind that would justify extending the tolling period by ten years on a cause of action with a two year statute of limitations. Ms. Simmonds' argument for tolling amounts to an assertion that her new 16(b) claims are so

---

[7] In their briefing, the parties contest whether Ms. Simmonds must affirmatively plead facts that establish equitable tolling. (*See, e.g.*, Mot. at 23; Resp. at 19-22.) Credit Suisse argues that Ms. Simmonds must plead facts that would establish tolling, but Ms. Simmonds argues she needs to plead only facts that do not negate equitable tolling. (*Id.*) The court declines to decide who is right because, as explained, on the face of her complaint, Ms. Simmonds pleads the absence of equitable tolling.

ORDER- 9

qualitatively different from her old 16(b) claims, and so much harder to uncover, that it would have taken a reasonably diligent shareholder 10 years longer to uncover the facts supporting the claims against Wilson Sonsini and Sequoia than it would have taken them to uncover the original claims against VA Linux insiders. In other words, Ms. Simmonds asserts that, notwithstanding the fact that a reasonably diligent shareholder knew all the facts supporting the original Complaint in 2002,[8] *see Simmonds*, 602 F.Supp.2d at 1217, it would be reasonable to allow that same hypothetical shareholder an additional 10 years of tolling to uncover the new facts needed to specify two more collaborators and allege the use of "collars."

The court cannot agree for several reasons. First and foremost, the "new" collaborators were actually included in the original Complaint, although indirectly. (*See Simmonds v. Credit Suisse*, No. 07-C1559JLR, 1st Am. Compl. ¶¶ 13-15, 18.) That Complaint alleged collaboration by, in addition to Credit Suisse and Lehman Brothers, "principal shareholders," "as well as other stock and option holders, as identified in the IPO Prospectus." (*Id.*) Both Wilson Sonsini and Sequoia had significant holdings of VA Linux stock were identified in the IPO Prospectus. (*See* Decl. of David Lesser (Dkt. # 32) Ex. 1 at 14-17, 23.) Thus, the "new" collaborator allegations in the new Complaint do not spring from newly-discovered facts, but from a changed legal theory. In any event, these allegations accomplish little more than to provide further detail to the original Complaint. Moreover, they do so based on information in the IPO prospectus,

---

[8] At oral argument, counsel for Ms. Simmonds suggested he disagreed with the court's earlier ruling. The court declines to reverse its earlier ruling, finding no basis for doing so.

ORDER- 10

which was available at the time of the IPO itself. (*See id.*)

Second, Section 16(b)'s statute of limitations is only two years, *see* 15 U.S.C. § 78p(b), and therefore allowing tolling now would be more than a five-fold extension of that limitations period. This is important because of what it implies about the court's regard for Congressional intent. Implicit in any tolling inquiry is a balancing between the policy behind statutes of limitations—providing finality and discouraging litigants from sitting on their rights—and the policy behind tolling—equity's recognition that it can be unfair to apply a time bar too strictly. The court cannot agree that this case presents circumstances so compelling that it justifies elevating equitable concerns so far above Congressional intent to warrant a ten-year extension of a two-year limitations period.

Finally, Ms. Simmonds' arguments in favor of tolling simply lack merit. Ms. Simmonds argues that she has been far more diligent in her investigation than a reasonable shareholder could be expected to be. (*E.g.*, Resp. (Dkt. # 34) at 23-24.) It is true that the diligence required for equitable tolling purposes is "reasonable diligence, not maximum feasible diligence," *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) (citing *Holland v. Florida*, 130 S. Ct. 2549, 2565 (2010)), and that "the standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). Rather, diligence requires only "the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Id.* Ms. Simmonds' theory is predicated on the idea that leading lawyers and academics are only now starting to uncover the theory articulated in this complaint, and thus it is unfair to expect the same of a reasonable

ORDER- 11

shareholder. This argument reveals the flaw in Ms. Simmonds' tolling theory. Ms. Simmonds may be right that the legal theories she argues are new. But all the facts underlying those theories have been known for a long time. Further, the court has already concluded that Ms. Simmonds did not meet the "reasonable shareholder" standard for her original Amended Complaint, concluding that "all . . . facts relied upon in these cases were known to the shareholders over five years before these complaints were filed." *Simmonds*, 602 F.Supp.2d at 1217. As explained above, the new complaint suffers from this same problem and Ms. Simmonds' additions are not sufficient to justify equitable tolling. Accordingly, the court rejects this argument.

The court also rejects Ms. Simmonds argument that tolling is justified by a "recent shift in academic opinion" regarding dot.com-era IPOs. (Resp. at 12-14.) This alone does not justify tolling the limitations period by over ten years. First, it is not clear that there has been any shift in academic opinion at all. Indeed, evidence presented by Ms. Simmonds in the prior litigation suggests perhaps not. (*See* Reply (Dkt. # 36) at 11 n.8 ("Plaintiff's Supreme Court brief relied heavily on an academic article from 2004 that focused extensively on the relationship between venture capital firms and leading investment banks.").) More importantly, a change in academic opinion does not equate to a change in the state of the underlying facts, nor does it make facts more discoverable than they were before. Equitable tolling is not designed to delay statutes of limitations until a lawyer can dream up a legal theory to fit the client's allegations. Rather, it is designed to apply where the facts themselves are not reasonably knowable before the limitations period expires. *Credit Suisse*, 132 S. Ct. at 1420 (Equitable tolling is not

available where the plaintiff "is aware, or should have been aware, of *the facts underlying the claim*." (emphasis added).) Here, as discussed above, the facts underlying Ms. Simmonds' claim were publicly available and were known or should have been known long ago. The fact that Ms. Simmonds lawyers have been diligently searching for, and have discovered, a new legal theory supported by those facts does not change anything.

Accordingly, the court concludes that equitable tolling does not apply in this case. As such, this action is barred by Section 16(b)'s two-year statute of limitations. The court declines to reach all other issues raised by the parties and grants leave to amend the complaint within 15 days of the date of this order.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Credit Suisse's motion to dismiss (Dkt. # 31) but grants leave to amend within 15 days of the date of this order. The court has difficulty seeing how the Complaint could be amended to plead a timely claim—and in fact amendment may be futile. However, the court nevertheless grants leave to amend out of an abundance of caution and in light of the fact that leave to amend should be granted with "extreme liberality" in securities cases. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). If Ms. Simmonds does not file an amended complaint within 15 days, the court will dismiss this action with prejudice.

Dated this 24th day of April, 2013.

JAMES L. ROBART
United States District Judge